William P. KEIG, Plaintiff and Appellant,

v.

Gladys J. KEIG, Defendant and Appellee.

Civ. No. 9465.

Supreme Court of North Dakota.

Sept. 29, 1978.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, and Edward M. Cohen, Minneapolis, Minn., for plaintiff and appellant; argued by Patrick J. Maddock, Grand Forks, and Edward M. Cohen, Minneapolis, Minn.

Kessler & Anderson, Grand Forks, for defendant and appellee; argued by David Kessler, Grand Forks.

PEDERSON, Justice.

This is an appeal by Dr. William Keig from a judgment granting him a divorce from Gladys Keig on the ground of irreconcilable differences (§§ 14–05–03 and 14–05–09.1, NDCC). The district court awarded Gladys Keig alimony and made a division of the property (§ 14–05–24, NDCC). The judgment is affirmed. Gladys Keig moved that this Court order Dr. Keig to pay attorney fees incurred by her in defending the suit in district court and on appeal. We decline to issue such order but remand for consideration of attorney fees on appeal by the trial court.

Dr. Keig and Gladys Keig separated in 1971 after 25 years of marriage. No formal decree of separation was obtained at that time (see Chapter 14–06, NDCC). The parties continued to live apart until a divorce was granted in 1977.

Two issues are raised by Dr. Keig's appeal:

(1) Did the trial court make an erroneous property division as a matter of law when it included property Dr. Keig accumulated while living separate from Gladys Keig?

(2) Is the division of property by the trial court equitable under all of the facts and circumstances in this case?

In the division of the property owned by the Keigs at the time of the divorce the trial court included a profit-sharing fund of approximately $246,500.00. Although Dr. Keig agrees that Gladys contributed much to his practice by working as a secretary-nurse during the early years of the marriage, he asserts that she contributed nothing to the existence of the profit-sharing fund.

Dr. Keig asserts that § 14–07–08, NDCC, applies. Section 14–07–08 provides, in part:

"The separate and mutual rights and liabilities of a husband and a wife are as follows:

"1. . . .

"2. The earnings of the wife are not liable for the debts of the husband, and the earnings and accumulations of the wife and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife;"

To avoid what he perceives as an unfair and unconstitutional application of the above statute, Dr. Keig would have us interpret § 14–07–08 as being applicable to divorce actions, and to mean that all of the earnings of each spouse are to be considered

wholly individual property not subject to a property division if acquired while living separately. We do not agree. There is no more appearance of unfairness in holding that property which he acquired while living separately is accountable to satisfy obligations which arose out of the status of marriage, than requiring that post-divorce earnings be used for post-divorce support or alimony payments. Section 14–07–08 is not applicable to this case nor is the constitutionality of § 14–07–08 an issue in this case.

Section 14–07–08, NDCC, is not part of our divorce law. This statute was passed in 1877 by the Dakota Territorial Legislature (Dakota Civil Code § 83, 1877) for the purpose of giving married women some control over their separately acquired property. Derived from California Civil Code § 169 (1872), § 14–07–08 gave married women the power to hold property in their own names, a right which previously had existed only for men. See Prager, *The Persistence of Separate Property Concepts in California's Community Property System, 1849–1975*, 24 UCLA L.Rev. 1, 45–46 (1976).

Dr. Keig asks us to consider *In Re Marriage of Bouquet*, 16 Cal.3d 583, 128 Cal. Rptr. 427, 546 P.2d 1371 (1976), wherein the California Supreme Court, acknowledging that the constitutionality of the statute was not before it, nevertheless commented that the statute "blatantly discriminated against the husband" before it was amended. The North Dakota statute has not been amended. It is possible that we could agree with the California court if we had an appropriate case before us; however, that does not have any bearing upon our decision in this case.

Although our Court in the case of *McLean v. McLean*, 69 N.D. 665, 290 N.W. 913 (1940), relied upon § 14–07–08 to exempt the wife's separate assets from certain debts of the husband, we held that *in a divorce action* the wife is liable for future maintenance of the husband out of her separate property. Our holding in *McLean, supra*, is consistent with the tenor of § 14–05–24, NDCC, which specifies that "when a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper . . . ." See, also, *Hagert v. Hagert*, 22 N.D. 290, 133 N.W. 1035 (1911).

■ Under § 14–05–24, NDCC, the trial court has jurisdiction to consider both joint and individual property owned by the parties in reaching an equitable division. *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976). As we recently stated in the case of *Fine v. Fine*, 248 N.W.2d 838, 840 (N.D.1976):

"While there may have been some confusion in the past as to the jurisdiction of the court in a divorce action to award the separate property of one spouse to the other [see *Fleck v. Fleck*, 79 N.D. 561, 58 N.W.2d 765 (1953)], it is now well settled that the court has such power, even when that separate property was acquired before the marriage."

■ Even though Gladys Keig did not actively contribute to the accumulation of the pension fund, there is no question but that it was accumulated while the marriage status existed. The district court was correct in considering the fund in the division of property. Gladys may not have contributed to accumulation of the pension fund per se, but the record indicates that she provided employment, effort and support towards establishing the medical practice. In making a division of the property, the marriage status and obligations arising therefrom, as a whole, must be considered. Contribution made by a spouse during the early years of a marriage is an important factor to be considered by the district judge in a division of the property. See *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). There was no error as a matter of law.

■ A review of the finding on property division does not leave us with a firm conviction that a mistake has been made. *Haugeberg v. Haugeberg*, 258 N.W.2d 657, 659 (N.D.1977); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973). The trial court is given wide discretion in determining an equitable division of the property. *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.

1977). It appears from the district court's memorandum decision that the following factors were considered in reaching an equitable division: the respective ages of the parties, their earning abilities, the duration of the marriage and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether it was accumulated before or after the marriage. See *Bohnenkamp v. Bohnenkamp*, 253 N.W.2d 439 (N.D.1977); *Fischer v. Fischer, supra.*

There was much conflicting testimony presented as to the value of various property but there is nothing to indicate that the trial judge did not understand, consider and weigh all that was presented. Dr. Keig's counsel on appeal says that there should have been expert appraisal evidence. As we said in *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D.1975), "It is not our function . . . to allow second guesses on trial strategy." Had expert testimony been offered, it would undoubtedly have been received. The trial court delayed proceedings for over 30 days to permit the appraisal of the property, but counsel took no advantage of the opportunity.

■ Using either party's estimates of the value of the assets of the marriage, Dr. Keig received substantially more than one-half of the accumulated property. We perceive no reason to conclude that the property division here is inequitable. Whether a particular division of property in a divorce case is or is not equitable is appropriately dealt with as a finding of fact. *Scheid v. Scheid*, 239 N.W.2d 833, 840 (N.D.1976). Under Rule 52(a), NDRCivP, the findings of fact will not be set aside unless they are "clearly erroneous." The fact that the property awarded to Dr. Keig may be more difficult to liquidate than that which was awarded to Gladys is not sufficient reason to disturb the decision of the district court. At best, we are asked to speculate as to tax consequences which *might* result if it be-

came desirable to liquidate the profit-sharing fund. We decline to do that.

■ Although there was no appeal from the attorney fees awarded by the trial court (Rule 4(a), NDRAppP), Gladys Keig moved that this Court change that award and that we award further attorney fees on the appeal. In *Orwick v. Orwick*, 152 N.W.2d 95, 97 (N.D.1967), we said:

" . . . while the trial court and this court have concurrent jurisdiction to hear such motion, as we held in *Bryant* [*Bryant v. Bryant*, 102 N.W.2d 800 (N.D. 1960)] and in *Zundel* [*Zundel v. Zundel*, 146 N.W.2d 903 (N.D.1966)], supra, we believe that the trial court is in a far better position to pass on such motion than is this court."

The motion before this Court in *Orwick* was made prior to this Court's hearing on that appeal, and the motion included a request for temporary support and alimony. In spite of this distinction, we believe that it is a sound practice to determine the necessity for and the amount of attorney fees only after a hearing, rather than basing such determination upon an affidavit such as we have in the instant case. Accordingly, this case is remanded to the trial court for consideration of a motion for attorney fees on the appeal.

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.