2002 ND 72

**Jenese A. PETERS–RIEMERS, Plaintiff and Appellee,**

v.

**Roland C. RIEMERS, Defendant and Appellant.**

**No. 20010135.**

Supreme Court of North Dakota.

May 14, 2002.

Petition for Rehearing filed June 4, 2002.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, ND, for plaintiff and appellee.

Roland C. Riemers, pro se, Grand Forks, ND, for defendant and appellant.

Reid Alan Brady, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for amicus curiae State of North Dakota.

NEUMANN, Justice.

[¶ 1]   Roland C. Riemers appealed from a district court judgment dissolving Riemers' marriage to Jenese A. Peters–Riemers, awarding custody of the parties' son, Johnathan, to Jenese with supervised visitation for Roland, awarding child support and spousal support to Jenese, and dividing the marital property.   We hold the trial court did not commit reversible error in these proceedings, and we affirm the judgment.

[¶ 2]   The following facts, as found by the trial court, are supported by the record.   Roland met Jenese, a non-U.S. citizen, in Belize in 1995 while vacationing there.   Roland was at that time married to another woman, and he falsely informed Jenese that he was in the process of divorcing his wife.   In early 1996, at Roland's invitation, Jenese left Belize and moved to North Dakota.   Roland provided her an apartment in Grand Forks and lived with her there.   However, Roland also frequently returned to Beulah where he would reside with his wife and their five children.   Roland had other extramarital affairs while residing with Jenese which, when she discovered them, created a constant source of distress and conflict within their relationship.

[¶ 3]   Jenese became pregnant by Roland, and on June 24, 1997 their son, Johnathan, was born.   Roland divorced his wife in 1998, and on March 6, 1999 Roland and Jenese were married.   In April 1999, Roland sponsored Jenese's application for permanent residency in the United States.   After incurring several instances of physical abuse by Roland, Jenese filed a complaint on March 7, 2000 seeking dissolution of the marriage.   After a bench trial, the court granted Jenese a decree of divorce from Roland on the grounds of adultery, extreme cruelty, and irreconcilable differences.   Upon finding Roland had committed domestic violence, the court awarded physical custody of Johnathan to Jenese and provided Roland "closely supervised" visitation with Johnathan.   The court awarded child support to Jenese of $1,150 per month and awarded her spousal support of $500 per month for five years.   The

court also divided the parties' marital property and debt.

[¶ 4] Roland, acting pro se, has appealed and has raised numerous issues on appeal.

## I. Jury Trial

■ [¶ 5] Roland requested a jury trial, but was given a bench trial. He asserts his state constitutional right to a jury trial was violated by the court. More specifically, Roland asserts the right to a jury trial in a divorce action existed at the time our state constitution was adopted and that right was preserved by the constitution, which provides that "[t]he right of trial by jury shall be secured to all, and remain inviolate." N.D. Const. art. I, § 13.[1] This provision of our constitution that right of trial by jury shall remain inviolate neither enlarges nor restricts that right but merely preserves it as it existed at the time of the adoption of our constitution. *In re R.Y.*, 189 N.W.2d 644, 651 (N.D.1971). It preserves the right of trial by jury for all cases in which it could have been demanded as a matter of right at common law. *Id.*

[¶ 6] In support of his claim for a jury trial Roland cites to 1883 Revised Codes of Dakota Territory, Civil Procedure § 236 which provides:

An issue of law must be tried by the court, unless it be referred as provided in sections 271 and 272. *An issue of fact in an action* for the recovery of money only, or of specific, real, or personal

property, of *for a divorce from the marriage contract, must be tried by a jury,* unless a jury trial be waived, as provided in section 265, or a reference be ordered, as provided in section 272. Every other issue is triable by the court, which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, or may refer it, as provided in section 272.

(Emphasis added.) Roland is remiss in not following the subsequent history of this territorial act. On March 12, 1885, the legislative assembly of the Territory of Dakota amended the act by deleting actions "for a divorce from the marriage contract" from those specified actions which must be tried by a jury. By this amendment, divorce actions became triable by the court, and by territorial enactment continued to be tried by the courts when the state constitution was adopted in 1889. *See* 1887 Compiled Laws Territory of Dakota, Civil Procedure § 5032.[2] Consequently, it is well settled that there is no right to a jury trial in divorce proceedings. *Selland v. Selland,* 519 N.W.2d 21, 22 (N.D.1994); *see also Martian v. Martian,* 328 N.W.2d 844, 845–46 (N.D.1983). We conclude, therefore, Roland's rights were not violated by the trial court's refusal to grant his request for a jury trial in this case.

## II. Visitation Statutes

■ [¶ 7] Under N.D.C.C. § 14–05–22(3), if the court finds that a parent has

---

1. This identical language was also contained in the constitution as originally adopted in 1889, under N.D. Const. art. 1, § 7.

2. This territorial enactment, which was effective at the time the state constitution was adopted, provided:

    An issue of law must be tried by the court or by the judge. An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived as provided in section 5065. Every other issue is triable by the court which, however, may order the whole issue or any specific question of fact involved therein, to be tried by a jury, or may refer it as provided in sections 5071 and 5072.

    Hence, both issues of law and fact in divorce actions, at the time the constitution was adopted, were triable by the court, not by jury.

perpetrated domestic violence and there exists one instance of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence in a reasonable time proximate to the proceeding, the court shall only allow supervised child visitation with that parent unless there is a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health. Under N.D.C.C. § 14–09–06.2(1)(j), if the court makes a similar finding of domestic violence, a rebuttable presumption is created that the parent who has perpetrated domestic violence may not be awarded custody of the child. The presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. Roland asserts these statutory provisions unconstitutionally shift the burden of proof onto the parent to prove "he deserves his basic constitutional rights" of custody and visitation with his child.

[¶ 8] Roland did not raise this issue before the trial court. It is well settled that an issue not presented to the trial court will not be considered for the first time on appeal. *Allied v. Dir. of N.D. Dep't of Transp.*, 1999 ND 2, ¶ 6, 589 N.W.2d 201. This constraint applies with particular force to a constitutional issue. *Id.* We, therefore, conclude Roland has failed to preserve this constitutional argument, and we decline to address it.

### III. Location of Trial Proceedings

[¶ 9] Roland asserts he was denied his due process rights, because the lower court tried this case in Cass County rather than in Traill County, where Roland resides. Generally, an action must be tried in the county in which the defendant resides at the time of the commencement of the action. N.D.C.C. § 28–04–05. However, in the absence of a timely objection, the trial court in a civil action may change the place of the trial from the location in which the matter was originally to be heard. N.D.C.C. § 28–04–10. Roland did not object to the trial being held in Cass County until more than several weeks after the trial had finished. We conclude Roland's objection was not timely and his claim of error is without merit. *See Varriano v. Bang*, 541 N.W.2d 707, 711 (N.D.1996).

### IV. Testimony of Minor and Appointment of Guardian Ad Litem

[¶ 10] Roland asserts the due process rights of his son, Johnathan, were violated because the court did not appoint a guardian ad litem for Jonathan and because the court did not allow Johnathan to testify. At the time of trial, Johnathan was only three years old. Roland's argument this toddler should have been allowed to testify is without merit. *See McDowell v. McDowell*, 2001 ND 176, ¶ 20, 635 N.W.2d 139.

[¶ 11] The trial court, in its discretion, may appoint on its own motion a guardian ad litem for a minor child when the court has reason for special concern as to the future welfare of the child. N.D.C.C. § 14–09–06.4; *see also Healy v. Healy*, 397 N.W.2d 71, 75 (N.D.1986). The trial court in this case appointed a guardian ad litem for Johnathan and ordered Roland to pay the retainer. When Roland refused to do so, the court's appointee refused to accept the appointment, and the court then found Roland in contempt for failing to pay the fee. The case proceeded without a guardian ad litem. The trial court's decision to proceed without a guardian ad litem will not be overturned unless the court has abused its discretion.

*Ludwig v. Burchill,* 514 N.W.2d 674, 677–78 (N.D.1994). Roland has not provided persuasive argument that the trial court abused its discretion in proceeding without a guardian ad litem.

## V. Trial Court Prejudice

■ [¶ 12] Roland asserts the trial court was biased against him and was incompetent. He claims the trial court demonstrated prejudice against him when he admonished Roland, who was about to put his daughter on the stand to testify about Roland's reputation, that Roland should "be careful of this one if I were you." Roland also claims the court showed prejudice in finding that Roland had committed a pattern of physical cruelty, extreme mental cruelty, and adultery toward his wife. Roland also claims the trial court's bias is demonstrated by the court's ruling limiting Roland to closely supervised visitation. He also claims the trial court "fired off minor questions and corrections to interrupt and completely frustrate" testimony Roland was trying to obtain from witnesses. Roland also asserts the trial judge demonstrated confusion when he was "not able to remember exhibit numbers, the case number he was trying, and even such basic information as which side had sequestered the witnesses, or that child custody was even in dispute in this case."

■ [¶ 13] Although a trial judge should make no remarks which would show bias on his part in favor of any party to a lawsuit, the trial judge is allowed great latitude of discretion in conducting the trial and, except for an obvious abuse of that discretion, his conduct of the trial will not be grounds for reversible error. *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 337 (N.D.1993). It is not a demonstration of bias that the trial court necessarily decides in favor of one party rather than the other, upon exercising its obligation to view the witnesses, weigh their credibility, and determine the facts. *Wolf v. Wolf,* 474 N.W.2d 257, 260 (N.D.1991). It is not a manifestation of bias or prejudice that a trial judge draws from the evidence findings of fact and conclusions which the complaining party would have evaluated differently. *Id.* General allegations amounting to nothing more than dissatisfaction with unfavorable trial court rulings are insufficient to demonstrate bias of the trial judge. *Evenstad v. Buchholz,* 1997 ND 141, ¶ 11, 567 N.W.2d 194. Roland's complaints about the judge's actions in this case derive primarily from his dissatisfaction with the findings and rulings of the court. Having reviewed the record, we are unpersuaded that the trial judge acted with bias or prejudice against Roland or that the trial court was confused or incompetent in presiding over this case. We conclude the trial court acted within its discretion in conducting the proceedings. Roland has failed to demonstrate an obvious abuse of discretion by the trial court in conducting the trial. He has not demonstrated either prejudice or incompetence by the court which would serve as grounds for reversible error.

## VI. Domestic Violence

■ [¶ 14] Roland asserts the trial court failed to make specific findings in concluding that Roland had perpetrated domestic violence. We disagree.

[¶ 15] The trial court made the following specific findings regarding Roland committing domestic violence against Jenese, all of which are supported by the evidence:

10. In the fall of 1996, Jenese became pregnant with the parties' son. A few months later, in February of 1997, Jenese learned of Roland's physical relationship with [another woman]. A phys-

ical argument erupted. During the course of such incident, Roland slapped and punched Jenese. He also kicked her in the stomach. Consequently, Jenese suffered vaginal bleeding and obtained medical treatment.

. . . . .

15. In October of 1999, Jenese heard Johnathan crying outside. She walked out to discover that Johnathan had fallen down the stairs and had hurt himself. Roland was standing a few yards away from Johnathan, talking on his phone instead of tending to his son. Jenese made an angry comment to Roland about his priorities then went back inside. Roland than came into the kitchen and slapped Jenese in the face.

16. During the marriage. Roland kept pornographic magazines and videos in the marital residence, sometimes in places where Johnathan would encounter them. In January of 2000, Jenese destroyed one of Roland's pornographic videos. When Roland discovered his destroyed tape, he came up behind Jenese as she was making a bed and kicked her in the back.

17. On March 4, 2000, after a verbal argument, Jenese attempted to leave the marital residence with the parties' son, Johnathan. Roland refused to allow her to leave with Johnathan, but attempted to force her out of her home alone. He pinned her left arm behind her back as she held Johnathan tight in her other arm. Jenese escaped long enough to call 911, but Roland hung up the phone. He then punched her in the face, knocking her to the ground. He broke a finger in the process. Jenese was later diagnosed with a fractured bone in her face.

18. On March 6, 2000, Jenese obtained a Temporary Protection Order against Roland. On March 7, 2000, Ro-

land was charged with felony assault as a result of striking Jenese. A No Contact Order issued as a condition of Roland's Pretrial Release. After a fully contested hearing, [a]n Adult Abuse Protection Order issued against Roland on March 14, 2000. At all of his appearances in the Protection Order proceeding, and at all times during this divorce, Roland maintained that his striking Jenese on March 4, 2000 was in self-defense. Nevertheless, on October 6, 2000, Roland pled guilty to the reduced charge of misdemeanor assault, admitting that a factual basis existed for that plea.

Roland's argument the court did not make specific findings about Roland's abuse of Jenese is without merit.

## VII. Alleged Domestic Violence By Jenese

[¶ 16] Roland asserts the trial court erred in finding Roland committed domestic violence but Jenese did not. The trial court made the following specific finding:

Roland committed at least one act of domestic violence which resulted in serious bodily injury to Jenese. During their relationship, there was a pattern of Roland inflicting domestic violence upon Jenese. On occasion, Jenese may have struck, hit or scratched Roland. However, her actions were largely in self-defense and were of a far less serious nature and degree than Roland's domestic violence.

Under N.D.C.C. § 14–09–06.2(j) evidence of domestic violence is a specifically enumerated factor for the court to consider in awarding child custody:

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the

court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

Under this statutory provision a single incident of domestic violence which results in serious bodily injury or a pattern of domestic violence creates a presumption that the perpetrator may not be awarded custody. With regard to the domestic violence factor, the trial court made clear and specific findings. The court found Roland had a pattern of inflicting domestic violence upon Jenese and that in at least one instance that violence resulted in serious bodily injury to her. The court found that although Jenese may have at times acted violently toward Roland, her actions were "largely in self-defense." Acts of domestic violence are mitigated when committed in self-defense. The trial court did not find Jenese's conduct toward Roland rose to a level of violence triggering the presumption against her receiving child custody. We conclude the trial court's findings are supported by the evidence and are not clearly erroneous.

## VIII.  Extreme Cruelty

[¶ 17]  Roland asserts the trial court's finding that Roland inflicted extreme cruelty on Jenese is clearly erroneous. Extreme cruelty is defined under N.D.C.C. § 14-05-05 as "the infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other." The trial court awarded Jenese a divorce on the grounds of adultery, extreme cruelty, and irreconcilable differences. Considering the physical violence perpetrated against Jenese by Roland and his illicit extramarital affairs there is substantial evidence to support the trial court's conclusion that extreme cruelty, consisting of both grievous bodily injury and grievous mental suffering, was inflicted by Roland upon Jenese during their marriage. The trial court's underlying findings of extramarital conduct and physical abuse are supported by the evidence and are not clearly erroneous.

## IX.  Premarital Agreement

[¶ 18]  Roland and Jenese entered into a premarital contract which the

court found was unconscionable and unenforceable. Section 14–03.1–06, N.D.C.C., provides in relevant part:

1. A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

   a. That party did not execute the agreement voluntarily; or

   b. The agreement was unconscionable when it was executed and, before execution of the agreement, that party:

      (1) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

      (2) Did not voluntarily sign a document expressly waiving any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

      (3) Did not have notice of the property or financial obligations of the other party.

   . . . . .

3. An issue of unconscionability of a premarital agreement is for decision by the court as a matter of law.

Section 14–03.1–07, N.D.C.C., provides:

Notwithstanding the other provisions of this chapter, if a court finds that the enforcement of a premarital agreement would be clearly unconscionable, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of an unconscionable provision to avoid an unconscionable result.

[¶ 19] Relevant to this issue, the trial court made the following specific findings of fact:

22. Three days before the parties married, Roland pressed Jenese to execute a premarital agreement. Such agreement purported to allocate the parties' debts and assets in the event of a divorce. It *did not*, however, prohibit an award of spousal support.

23. The parties' premarital agreement is not enforceable pursuant to NDCC, § 14–03.1–06, due to the following factual circumstances:

   a. The premarital agreement was sprung on Jenese just three days before the parties' marriage.

   b. Jenese did not have the benefit of independent legal advice prior to signing the agreement. . . . She was required to read the agreement in the same room, at the same table, where Roland and his attorney sat, causing a coercive environment. Her reading of the agreement was, thus, cursory, and her understanding of its consequences limited.

   c. Roland did not provide Jenese a fair and reasonable disclosure of his property and financial obligations. Roland evidences an abject disability to make honest financial disclosures. This fact was particularly evident with respect to the financial disclosures he made to Jenese in the premarital agreement. For example, Roland disclosed a "net worth" of $473,724 in the premarital agreement. However, just a matter of months earlier, on loan applications, he had disclosed a net worth of $1,341,500, $683,683 and $706,178. Roland provided no explanation for these widely varying amounts. In addition, attached to each of Roland's loan applications is a "Schedule of Real Estate Owned". These schedules disclose equity values for Roland's various real

estate holdings vastly different than the amounts he disclosed on the premarital agreement.

d. Jenese did not voluntarily waive her right to a fair and reasonable disclosure of Roland's property or financial obligations.

e. Jenese did not have notice of the true state of Roland's property or financial obligations.

. . . . .

31. Roland's representations of his income are neither credible nor reliable. He did not file taxes in 1997, 1998 or 1999, a failure a Court appointed forensic accounting expert deemed a criminal violation. Roland drafted multiple phony returns in 1998, which identified income amounts varying by more than $80,000, some of which identified Jenese as his wife, even though they weren't married until March of 1999.

(Emphasis in original.) Based upon these findings, the trial court reached the following conclusion:

16. *PREMARITAL AGREEMENT UNENFORCEABLE:* The parties' premarital agreement, dated March 3, 1999, is unenforceable pursuant to North Dakota Century Code, Sections 14–03.1–06 and 14–03.1–07.

(Emphasis in original.)

[¶ 20] Lack of adequate legal advice for a prospective spouse to obtain independent counsel is a significant factor in weighing the voluntariness of a premarital agreement. *Matter of Estate of Lutz,* 1997 ND 82, ¶ 34, 563 N.W.2d 90. Even if a premarital agreement has been voluntarily entered, the substantive enforceability of it is a matter of law to be decided by the court. *Id.* at ¶ 39. Roland's failure to provide truthful and accurate financial information to Jenese prior to her entering the premarital agreement is sufficient ground to render it unenforceable. Roland's own tes-

timony highlights his disregard for telling the truth in these proceedings:

Q To your way of thinking, Mr. Riemers, is it a lie to conceal the truth?

A I thought the whole purpose of the legal process is to misdirect truth most of the time, Mr. Gjesdahl.

Q I'm asking you for your take on this. Is it a lie to your way of thinking to conceal the truth?

A No, I think concealing the truth is part of the normal legal process if you're, you know, in a court case.

We conclude the trial court did not err in refusing to enforce the premarital agreement.

X. Unconstitutional Division of Marital Property

■■■ [¶ 21] Roland asserts the trial court erred by not dividing the parties' property as required by N.D. Const. art. XI, § 23. We quote Roland's entire argument on this issue:

"[A]s a matter of law, Article 11, Section 23 of the North Dakota [sic] allows women to keep their pre-marital property. As a matter of state law (and probably Federal Constitutional Law as well) in North Dakota, gender terms are interchangeable. N.D.C.C. 1–01–34. Therefore by North Dakota constitution parties keep premarital property."

N.D. Const. art. XI, § 23, provides:

The real and personal property of any woman in this state, acquired before marriage, and all property to which she may, after marriage become in any manner rightfully entitled, shall be her separate property, and shall not be liable for the debts of her husband.

This provision quite clearly and simply provides that the premarital property of a woman remains her property upon mar-

riage and is not subject to her husband's separate debts. Prior to statehood and the adoption of our state constitution, the Dakota Territorial Legislature enacted legislation with similar language to the above-quoted constitutional provision, making the separate property of the husband and wife not liable for the debts incurred by the other before marriage. *See* Civ. C. 1877, § 83; S.L. 1893, ch. 52, § 2; R.C. 1895, § 2770, subss. 1 to 4; R.C. 1899, § 2770, subss. 1 to 4. That legislation is currently codified under N.D.C.C. § 14–07–08.[3]

[¶ 22]   In *Keig v. Keig,* 270 N.W.2d 558, 560 (N.D.1978), this Court concluded the statutory language is not part of our divorce law and does not affect the court's authority to divide marital property:

> Section 14–07–08, NDCC, is not part of our divorce law. This statute was passed in 1877 by the Dakota Territorial Legislature (Dakota Civil Code § 83, 1877) for the purpose of giving married women some control over their separately acquired property. Derived from California Civil Code § 169 (1872), § 14–07–08 gave married women the power to hold property in their own names, a right which previously had existed only for men.
>
> . . . . .
>
> Under § 14–05–24, NDCC, the trial court has jurisdiction to consider both joint and individual property owned by the parties in reaching an equitable division.

This Court's decision in *Keig* did not address N.D. Const. art. XI, § 23. Howev-er, that constitutional provision contains language and import similar to the statute. We conclude the constitutional provision, like the statute, is not part of our divorce law and has no application to the court's division of marital assets in dissolving a marriage. We, therefore, further conclude Roland has not provided persuasive argument that his alleged rights under N.D. Const. art. XI, § 23 were violated by the trial court in dividing the parties' marital property.

### XI.   Property Distribution— Math Computation

[¶ 23]   Roland asserts the trial court erred in using valuations of the parties' property submitted by Jenese while not using any valuations submitted by Roland. The trial court's decisions in distributing marital property between spouses are findings of fact reviewed on appeal under the clearly erroneous standard. N.D.R.Civ.P. 52(a). A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based upon physical or documentary evidence, inferences from other facts, or on credibility determinations. *Fox v. Fox,* 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 24]   In its initial findings of fact, the trial court summarized the total debt of the parties and understated that debt by $111,888. Consequently, we remanded the case to the trial court under N.D.R.App.P. 35(b) for reconsideration of the property distribution in light of the correct total debt amount. Upon remand the trial court corrected the total debt figure in its

**3.**   Civ. C. 1877, § 83(4) provided:

The separate property of the wife is not liable for the debts of her husband, but is liable for her own debts, contracted before or after marriage.

As amended and codified under N.D.C.C. § 14–07–08(4) the provision states:

The separate and mutual rights and liabilities of a husband and a wife are as follows:

. . . .

4.   The separate property of the husband or wife is not liable for the debts of the other spouse but each is liable for their own debts contracted before or after marriage.

findings of fact and explained the error was a clerical error which had no adverse effect on the court's property distribution:

> The North Dakota Supreme Court has remanded this matter to this Court because "the trial court understated the parties['] debt by $111,888". This error was clerical, not substantive. In other words, the trial court, after a five day trial, was as aware of the parties' estate as it could be.

> The Court's ultimate debt and asset allocation was precisely as it intended. This fact is apparent in the specificity with which the Court, in both its original Findings of Fact and Conclusions of Law, identified and allocated specific, enumerated debts. The only place in which the $111,888 error appears is in the totalling of the enumerated debt as set forth in the concise summary.

> . . . .

> The Court was well aware of this debt and allocated liability therefor[e] in the manner it intended. It simply made a clerical omission in failing to modify the debt total stated in the Summary.

[¶ 25] Roland has failed to demonstrate that the trial court's clerical error in summarizing the total debt resulted in a clearly erroneous distribution of the marital property. The trial court has satisfactorily explained the error was strictly clerical, not substantive, and the trial court corrected the total debt amount in its findings entered after our remand. We conclude, therefore, the understatement of the total debt amount was merely a clerical mistake and does not constitute reversible error.

### XII. Spousal Support

[¶ 26] Roland asserts the trial court erred in awarding Jenese spousal support of $500 per month for five years. Spousal support determinations are treated as findings of fact and will not be reversed on appeal unless they are clearly erroneous. *Kautzman v. Kautzman,* 1998 ND 192, ¶ 19, 585 N.W.2d 561. An award of spousal support must be made in light of the needs of the disadvantaged spouse and of the supporting spouse's needs and ability to pay. *Id.* Rehabilitative spousal support is ordered to give a disadvantaged spouse an opportunity to become adequately self-supporting through additional training, education, or experience. *Id.* However, a spouse's need for rehabilitation is not limited to the prevention of destitution, and continuance of a standard of living is a valid consideration in a rehabilitative spousal support determination. *Id.*

[¶ 27] The trial court found that Roland has a gross income of $110,000, and, for child support purposes, a net income of $5,500 per month. The trial court found that Jenese, who is employed as a certified nurse's aid, earns approximately $7 per hour and can expect to earn a gross income of $14,560 per year with a net income of approximately $1,000 per month. The trial court found that the parties had established a middle class standard of living during their marriage, and that as a result of the marriage dissolution "Roland's personal standard of living has not diminished in the least." But the court also found that Jenese's standard of living "has diminished substantially" and that Jenese "has been substantially disadvantaged by her marriage to and divorce from Roland." We conclude the trial court's findings are supported by the evidence and are not clearly erroneous. We further conclude the trial court's award of spousal support is supported by the evidence and is not clearly erroneous.

### XIII. Life Insurance

[¶ 28] Roland asserts the trial court abused its discretion in requiring Roland to maintain a life insurance policy until Johnathan is 18 years old. Under

N.D.C.C. § 14–08.1–03, the trial court can "require reasonable security for payments" of child support as ordered by the court. We find no error in the trial court's requirement Roland maintain life insurance as security for his obligation to pay child support for Johnathan.

### XIV. Health Insurance

[¶ 29] Roland asserts the trial court abused its discretion in requiring him to provide health insurance for Johnathan. Section 14–09–08.10, N.D.C.C., requires the trial court to provide in each order entered for the support of a child a provision for health insurance coverage for that child. If the parent having physical custody of the child can obtain health insurance for the child "at no or nominal cost" that parent must be required to do so. Otherwise, the noncustodial parent must be required to provide coverage for the child if it is or becomes available "at reasonable cost." The court must, nevertheless, enter an appropriate order providing for health insurance coverage for the child even though such coverage is not available to the custodial parent "at no or nominal cost" or to the noncustodial parent "at reasonable cost."

[¶ 30] There is no evidence in the record to support even an inference that Jenese has available to her health insurance coverage for Johnathan at "no or nominal cost." However, there is evidence in the record that Roland had a health insurance policy at a cost of $213 per month. There is no evidence itemizing the amount of that premium which is attributable to insurance for Johnathan. Nevertheless, we conclude the evidence is sufficient for the court to have found that, under the circumstances, health insurance coverage for Johnathan is available at reasonable cost to Roland. We conclude, therefore, the trial court did not err in requiring Roland to provide health insurance coverage for Johnathan.

### XV. Conclusion

[¶ 31] Roland has raised additional issues which we find are devoid of merit and do not warrant further discussion. In accordance with this opinion, we affirm, in its entirety, the judgment of the district court.

[¶ 32] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.