1999 ND 91

Nancy A. BARTH, Plaintiff and Appellee,

v.

Dale W. BARTH, Defendant and Appellant.

No. 980241.

Supreme Court of North Dakota.

May 19, 1999.

Melvin L. Webster, of Webster & Engel, Bismarck, N.D., for plaintiff and appellee.

John J. Mahoney, of Mahoney & Mahoney, Center, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Dale W. Barth appealed the judgment, and an order amending the judgment, in a divorce action brought by Nancy A. Barth. We affirm.

[¶ 2] Nancy A. Barth and Dale W. Barth married in 1988. Three children were born to the parties—Danica Oberlander in 1981, Desirae Barth in 1988, and Deriann Barth in 1992. The parties lived in a mobile home on Dale's parents' farmstead. Dale, a farmer, leased cropland and equipment from his father, Otto Barth, for $20,000 per year. The parties separated in February 1997, when Nancy and the children left the family home.

[¶ 3] The trial court awarded Nancy a divorce from Dale, awarded Nancy custody of the children, awarded Dale four hours of supervised visitation with the children on the first and third weekends of each month, and ordered Dale to pay child support of $452 per month. The trial court awarded Nancy property valued at $13,193 and debt of $8,902, for a net award of $4,291. The trial court awarded Dale property valued at $69,375 and debt of $31,250, for a net award of $38,125. "To equalize property and debts," the trial court ordered Dale to pay Nancy "$16,917.00 on or before July 1, 1998." The court ordered Dale to pay Nancy's attorney fees of $4,976. After the judgment was entered, the trial court ordered it amended by ordering Dale "to pay $719.97 in court costs in this action" and that "Dale is to be credited for $1,150 he has already paid toward Nancy's attorney's fees."

[¶ 4] Dale contends the trial court's division of property and calculation of Dale's income are clearly erroneous. Dale requests we reverse the judgment and "adjust[ ] the property division to exclude or limit from any award to Nancy the value of the three quarters of property which was paid for by Otto Barth, and adjust the calculation of Dale's income to properly establish his child support and attorney fee obligations."

I

[¶ 5] Dale's complaint about the property distribution revolves around three quarters of land which Dale and Otto purchased on a contract for deed in 1991, payable over five years, which became paid for in 1995, and Nancy's interest, with her siblings, in one

quarter of land, which she brought into the marriage. The trial court found the parties owned a one-half interest in the land purchased in 1991 and valued it at $43,200, which it included in the property distribution. When the land in which Nancy had a premarital interest was sold in 1997, Nancy received $11,000, which the trial court did not specifically address in the property distribution.

[¶ 6] Dale contends "consideration must be given to the fact that Dale's father paid the entire purchase price for the contracted three quarters of land. Any interest owned by Dale was 'gifted' at best." Dale contends, "There is no evidentiary support to justify awarding any benefit to Nancy in this land." As to Nancy's premarital interest in one quarter of land, Dale contends, "The court erred as a matter of law in not including this property in the marital estate and making determinations as to its source and distribution."

[¶ 7] A trial court's determinations on valuation and division of marital property are treated as findings of fact and will be reversed on appeal only if they are clearly erroneous. *Gregg v. Gregg*, 1998 ND 204, ¶ 13, 586 N.W.2d 312; *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561; *Linrud v. Linrud*, 1998 ND 55, ¶ 7, 574 N.W.2d 875; *Grinaker v. Grinaker*, 553 N.W.2d 204, 208 (N.D.1996). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman*, at ¶ 8. A trial court's findings of fact are presumed correct. *Kautzman*, at ¶ 8; *Grinaker*, at 208. The burden is on the complaining party to demonstrate on appeal a finding of fact is clearly erroneous. *Linrud*, at ¶ 7.

[¶ 8] Under N.D.C.C. § 14–05–24, "the court must consider *all* of the property accumulated by the parties, both jointly and individually owned," *Hoge v. Hoge*, 281 N.W.2d 557, 561 (N.D.1979), "regardless of source," *Zuger v. Zuger*, 1997 ND 97, ¶ 8, 563 N.W.2d 804. "We have repeatedly held that

property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution." *Grinaker*, 553 N.W.2d at 208. " '[O]nly after all assets are included in the marital estate can a trial court apply the Ruff–Fisher [sic] guidelines and consider the sources of the property in making an equitable distribution.' " *Linrud v. Linrud*, 552 N.W.2d 342, 344 (N.D.1996) (quoting *Gaulrapp v. Gaulrapp*, 510 N.W.2d 620, 621 (N.D. 1994)). A trial court may properly consider property to be marital property, if supported by evidence, even though a party claims it is owned by a nonparty. *See Dinius v. Dinius*, 448 N.W.2d 210 (N.D.1989). Marital property ordinarily will be valued as of the date of trial. *Grinaker*, 553 N.W.2d at 208–09. "An equal division of marital property is a logical starting point in a long-term marriage." *Linrud*, 1998 ND 55, ¶ 7, 574 N.W.2d 875. Thus, "we begin with the view that marital property should be equally divided and substantial disparities must be explained." *Kautzman*, 1998 ND 192, ¶ 21, 585 N.W.2d 561.

### a. Contract for Deed Land

[¶ 9] Nancy testified the three quarters of land purchased on a contract for deed during the marriage were paid for "[t]hrough cattle. When they sold the calves, grain." She testified, "To my knowledge, Dale and Otto Barth both" "made the payments on the contract for deed." She testified, "I am sure Otto wrote the checks, because Dale doesn't own or take care of a checking account."

[¶ 10] Nancy introduced as an exhibit a contract for deed executed on December 30, 1991, for the sale and purchase of three quarters of land in Oliver County, described as "NW ¼, NE ¼, and SW ¼, Section 16–142–83," for $86,400, with a down payment of $25,920, and the balance payable in four installments due on December 1 in the years 1992–1995. The contract for deed recites it is "by and between KENNETH PORSBORG and DARLENE PORSBORG, husband and wife (hereinafter 'Seller'), ... and OTTO BARTH and DALE BARTH, father and son, (hereinafter 'Purchaser')."

[¶ 11] Ellen Leinus, Oliver County abstracter, did a search on the three quarters of land, starting with the "contract for deed, document number 73776, which was filed December 30, 1991 at 2:00 p.m." Leinus testified that, since then, on March 24, 1997, a quitclaim deed was entered, "in which the grantor was Otto Barth and Barbara Barth, husband and wife, and the grantee was Barbara Barth," and there have been no other conveyances of title.

[¶ 12] Dale testified he does not own any land. Dale testified Otto Barth made all the payments on the three quarters of land "by checks written," Dale made none of the payments, the land is not under his control, and Otto Barth pays the taxes on the land. Dale testified his name was put on the contract for deed "for secondary name. The way that was wrote up was for a contract for deed. If there is a default on a payment, that my dad would not have been able to make a payment on it in any way, the land would have went back to Porsborgs."

[¶ 13] A choice between two permissible views of conflicting evidence is not clearly erroneous. *Gregg*, 1998 ND 204, ¶ 7, 586 N.W.2d 312. We conclude the trial court's findings of fact on the ownership, valuation, and distribution of the three quarters of land purchased by Dale and Otto Barth in 1991 are not clearly erroneous.

### b. Nancy's Land

[¶ 14] Dale contends the trial court erred in not including in the marital estate a quarter of land in which Nancy had an interest before the marriage. The land was sold in 1997 and Nancy received $11,000 for her interest in it. Nancy no longer owned the land at the time of trial and had spent much of the proceeds. The trial court did not specifically address Nancy's premarital interest in the land or her disposition of the proceeds of her share of its sale.

[¶ 15] The financial status of divorcing parties, as it existed at the time of the commencement of the action, ordinarily should be maintained until the court has had an opportunity to appraise the evidence and determine the rights of the parties to the marital property, so, without a prior order of the court, neither party should dispose of or encumber marital property except in the normal course of business or personal affairs. We recognize a spouse will sometimes have an immediate need to cover expenses arising in the transition from married to single life, such as replacing household items, purchasing a car, or moving to another residence. "We have often said, however, a disadvantaged spouse is not required to deplete her property distribution in order to live." *Fox v. Fox*, 1999 ND 68, ¶ 24, 592 N.W.2d 541.

[¶ 16] Where a party transfers marital assets, resulting in dissipation of marital assets, inclusion of the value of the transferred assets in the dissipating party's share of the marital property distributed is "an appropriate method of reaching an equitable property division in light of [that party's] economic fault." *Halvorson v. Halvorson*, 482 N.W.2d 869, 870–71 (N.D.1992). "A party's dissipation of marital assets is a particularly relevant factor in arriving at an equitable distribution of the property." *Id.* at 871. "The allocation of value of dissipated assets is to offset the improper disposition of those assets." *Id.* at 871. However, if a marital asset has been converted into other marital assets or to a reduction of marital debt, "the mere fact that an asset has been in some way converted to another form does not necessarily mean the asset has been wasted or the net marital estate has been reduced." *Linrud v. Linrud*, 552 N.W.2d 342, 345 (N.D.1996).

[¶ 17] Nancy and the parties' three children left the family home in February 1997. The trial was held in April 1998. Nancy introduced an exhibit showing she spent $8,697 paying bills, repaying debts, paying her daughter Danica for babysitting, buying clothes and furniture, paying her attorney, paying taxes, and making the down payment on a car, which the trial court awarded to her, along with its attendant debt. Nancy testified she used the balance of the $11,000 "for buying clothes and food and whatever since I left Dale, odds and ends stuff."

[¶ 18] In a post-trial brief, Dale said he "does not contest Nancy's entitlement to the proceeds from the sale of her property in

Mercer County," while contending, "[l]ikewise, the three quarters must be excluded from any property division." In that brief, Dale also said he "realizes that Nancy will have more immediate needs for personal property and the good car for taking care of the children."

[¶ 19] Dale has not contended this was a case, like *Bell v. Bell*, 540 N.W.2d 602, 605 (N.D.1995), where one party to a marriage "distributed to himself around 90 percent of all marital assets" and then "dissipated the assets without regard to his wife, his child, or any of the other children for whom he owes child support." The trial court found "[n]othing indicates that the conduct of the parties materially affected the accumulation or distribution of marital property" and "[t]here are no other material factors affecting property distribution." Dale has "failed to prove how any of the money was unaccounted for or inappropriately spent by" Nancy. *See Linrud v. Linrud*, 1998 ND 55, ¶ 11, 574 N.W.2d 875.

[¶ 20] We conclude the trial court did not err in failing to specifically include in the marital estate for distribution Nancy's premarital interest in land sold in 1997.

### c. Conclusion

[¶ 21] Our review of the record has not left us with a definite and firm conviction a mistake has been made in the distribution of the parties' marital property. The trial court's findings on property distribution are, therefore, not clearly erroneous.

## II

[¶ 22] Dale contends the trial court's calculation of his income is clearly erroneous. Dale argues the trial court erred in including $20,000 of unreported income in 1996, in including grain sales of $35,848.19 in 1996, and in excluding farm expense deductions of $45,271 in 1997.

### a. Unreported Income of $20,000

[¶ 23] The trial court included unreported income of $20,000 in calculating Dale's 1996 income. At an interim order hearing, Dale testified his 1996 income tax return showed no grain sales, he received no income from grain sales in 1996, and "[g]rain got

sold in my Dad's name because I couldn't come up with the $20,000 cash rent." Dale deducted $20,000 on his 1996 tax return for the rent, but did not report income for grain sold in his father's name to pay the rent. We conclude the trial court's inclusion of $20,000 in unreported income in 1996 did not make the court's finding on Dale's income clearly erroneous.

### b. 1996 Grain Sales of $35,848.19

[¶ 24] The trial court included a 1996 grain check for $35,848.19 in calculating Dale's 1996 income. Dale contends that money was reported in his 1995 income tax return.

[¶ 25] Vicki Benzmiller, the office manager at the Benson–Quinn Grain Elevator at Underwood testified she issued a check to Dale on January 12, 1996, for grain sold in the amount of $35,848.19. Dale testified he did not declare that income on his 1996 tax return, and that grain "was sold in 1995. I don't know where they got their numbers from."

[¶ 26] There is evidence supporting the trial court's finding, and our review has not left us with a definite and firm conviction a mistake has been made. We conclude the trial court's inclusion of $35,848.19 for grain sales in 1996 did not make the court's finding on Dale's income clearly erroneous.

### c. 1997 Farm Expenses

[¶ 27] The trial court found "Dale W. Barth has failed to comply with discovery requests and court orders requiring him to divulge information about his income over the past five years." As a sanction for discovery abuse, the trial court did not deduct $45,271 in 1997 farm expenses claimed by Dale in calculating Dale's income. Dale contends, "Although Rule 37, N.D.R.O.Civ.P., gives the trial court broad discretion in applying sanctions for failure to comply with discovery, totally disallowing these expenses is clearly an abuse of discretion and contrary to law." Dale argues, "By applying a sanction that has such a substantial effect on Dale's child support, Dale is left with an uncertain, open ended and continuing penalty," and he

"would be paying this penalty every month he pays child support."

[¶ 28] We recognize that, under N.D. Admin. Code § 75–02–04.1–05(1995), which provides, in determining a farmer's income for calculating a child support obligation, "the average of the most recent five years of farm operations, ..., should be used to determine farm income," an income calculated by excluding expenses as a sanction for discovery abuse will have a continuing impact, resulting in an artificially high child support obligation for a number of years. However, while such a continuing penalty will not often be appropriate, we also recognize "that consideration must be balanced against the need to deter discovery abuses, promote efficient litigation, and protect the interests of all litigants." *Vorachek v. Citizens State Bank,* 421 N.W.2d 45, 51 (N.D.1988).

[¶ 29] "A party is not at liberty to 'pick and choose' what information will be provided and what information will be withheld. Selective, substantial compliance is not enough; complete, accurate, and timely compliance is required by the rules." *Vorachek,* 421 N.W.2d at 51. Rule 37, N.D.R.Civ.P., authorizes a court to impose sanctions upon a party for failing to make or cooperate in discovery. If a party applies for an order compelling discovery, and the motion is granted or if the requested discovery is provided after the motion was filed, "the court shall, ..., require the ... party or attorney advising the conduct, ..., to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees," unless the court finds the conduct was justified or an award of expenses would be unjust. N.D.R.Civ.P. 37(a)(4)(A). Rule 37(b)(2), N.D.R.Civ.P., provides in part that, upon a party's failure "to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure that are just," including ordering that matters or facts "be taken to be established ... in accordance with the claim of the party obtaining the order," or "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence," striking pleadings, dismissing the action, rendering a default judgment against the disobedient party, and treating failure to obey orders as a contempt of court.

[¶ 30] "Generally, sanctions exist to further two goals. First, sanctions exist to penalize those whose conduct is deemed to warrant a sanction; second, they exist to deter others who may be tempted to behave in such a way as to warrant the imposition of a sanction." *Bachmeier v. Wallwork Truck Centers,* 507 N.W.2d 527, 533 (N.D.1993). "Sanctions must be tailored to the severity of the misconduct," *Vorachek,* 421 N.W.2d at 51, and "must be reasonably proportionate to the misconduct," *Dethloff v. Dethloff,* 1998 ND 45, ¶ 16, 574 N.W.2d 867. We apply an abuse-of-discretion standard in reviewing a trial court's ruling on sanctions for discovery violations. *Wolf v. Estate of Seright,* 1997 ND 240, ¶ 17, 573 N.W.2d 161; *Towne v. Dinius,* 1997 ND 125, ¶ 14, 565 N.W.2d 762. "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner." *Towne,* at ¶ 14.

[¶ 31] On May 20, 1997, the district court issued an interim order requiring Dale to pay child support, allowing Nancy continued use of personal property in her possession, and requiring Dale to contribute $1,000 toward Nancy's attorney fees. On October 14, 1997, the court ordered Dale to show cause why he should not be judged guilty of contempt of court for failing to pay $1,000 toward Nancy's attorney fees. In an order issued November 18, 1997, the court found Dale had not answered Nancy's interrogatories, not responded to Nancy's demand for production of documents, not complied with the court's order to file a N.D.R.Ct. 8.3 statement, and not complied with the court's order to pay $1,000 in attorney fees to Nancy. The court found Dale in contempt of court and ordered him to do the following within 30 days: (1) comply with Nancy's discovery requests; (2) pay $1,000 in attorney fees ordered on May 20, 1997; (3) pay an additional $150 in attorney fees in regard to Nancy's motion to compel discovery and to the contempt citation; and (4) file a Rule 8.3 statement.

[¶ 32] On February 5, 1998, the district court ordered Dale to show cause why he "should not be judged guilty of contempt of court for his failure to comply with the Court's order to pay $1,150 to Plaintiff for her attorney fees and to comply with Plaintiff's discovery request." On March 23, 1998, the court again issued an order finding Dale in contempt of court:

A hearing was held on an Order to Show Cause why Dale W. Barth should not be held in contempt for his failure to answer Plaintiff's discovery request as required by the Court in its Order dated November 18, 1997, and Defendant's failure to pay attorney fees of $1,150.00 as previously ordered by the Court. . . . A oral stipulation was presented from Plaintiff and Defendant whereby Defendant Dale W. Barth agreed to provide to Plaintiff all supporting documentation, including worksheets and receipts, for his 1997 tax return and other farm records which he may have no later than Tuesday, March 25, 1998. Defendant Dale W. Barth also agreed to provide to Plaintiff a copy of his 1997 income tax return and all accompanying schedules no later than Friday, March 27, 1998. The Court makes the following findings of fact:

1. The Court accepts the stipulation of the parties regarding discovery which was read into the record.

2. Dale Barth has refused to pay attorney fees previously ordered by the Court in the amount of $1,150. . . .

. . . .

4. The Court finds that Defendant Dale W. Barth is in contempt of Court for his willful failure to pay attorney fees as previously ordered by the Court.

NOW, THEREFORE, IT IS ORDERED as follows:

1. Defendant Dale W. Barth shall comply with the stipulation of the parties regarding discovery. Failure to do so shall result in the imposition of appropriate sanctions by the Court.

2. Dale W. Barth is hereby remanded to the custody of the Sheriff of Oliver County for a period of 30 days or until such time as he complies with the Court's order to pay $1,150.00 for Plaintiff's attorney fees.

[¶ 33] Dale has not disputed Nancy's assertion he did not produce his 1997 tax return until March 30, 1998, just three days before trial, and never did provide the supporting documentation required by the court. In a post-trial brief, Nancy argued:

Defendant's expenses for the year 1997 should not be considered by the Court. Prior to trial, Plaintiff submitted a motion for sanctions due to Defendant's failure to abide by the stipulation the parties agreed to at the order to show cause contempt hearing on March 20, 1998. Plaintiff did not receive any of the supporting documentation for Defendant's 1997 tax return prior to the date of trial. On the morning of trial Defendant provided only a list of expenses, no receipts or other documentation were furnished. Due to Defendant's failure to abide by this discovery stipulation, the Court should not consider his 1997 expenses and conclude that his net income for 1997 is $31,919.

The trial court did as Nancy suggested.

[¶ 34] Dale's evasiveness about financial matters extended to the trial. When Dale's father, Otto Barth, was being examined about the number of cattle on the farm, the trial court admonished Dale:

Before we proceed further, I want the record to reflect that Mr. Dale Barth was making hand signals to his father, which I interpreted to mean, don't answer the question.

I am instructing you now, Mr. Dale Barth, that you are to stop making any gestures or communications to the witness while the witness is testifying.

In a post-trial order on attorney fees, the court said: "The court takes judicial notice of the difficulty presented to Nancy's counsel by Dale's failure to cooperate with discovery. At trial, Dale gave non-verbal signals to his father Otto in an attempt to conceal potential marital assets." On examination by Nancy's attorney at trial, Dale testified, "You told me to produce tax returns, and I did that." He testified he did not provide amended tax returns because Nancy's attorney "didn't ask for" amended tax returns.

[¶ 35] Dale did not provide the "complete, accurate, and timely compliance [ ] required by the rules." *Vorachek v. Citizens State Bank,* 421 N.W.2d 45, 51 (N.D.1988). Dale responded to discovery requests and orders with "delay, evasiveness, and noncompliance." *Dethloff v. Dethloff,* 1998 ND 45, ¶ 14, 574 N.W.2d 867. Dale's discovery misconduct was "extreme, persistent, and willful." *Id.* "From this deep record of intentional delay, evasion, and nonresponsiveness," *id.,* we conclude the trial court's exclusion of Dale's 1997 farm expenses in calculating his income for determining his child support and attorney fee obligations, was an "appropriate sanction for [Dale's] pronounced procedural misconduct," *id.* at ¶ 18. "Although we may have ruled differently had we been in the position of the trial court, we cannot say the court acted arbitrarily, unreasonably, or unconscionably." *Towne v. Dinius,* 1997 ND 125, ¶ 14, 565 N.W.2d 762. We conclude the trial court did not abuse its discretion in disallowing deduction of 1997 farm expenses claimed by Dale in calculating Dale's income.

### d. Conclusion

[¶ 36] We conclude the trial court's calculation of Dale's income is not clearly erroneous.

### III

[¶ 37] The judgment and order are affirmed.

[¶ 38] VANDE WALLE, C.J., and MARING, KAPSNER and SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 39] There is no doubt Dale Barth was in contempt of court and the trial court was entirely justified in imposing sanctions for that contempt. I agree the trial court has broad discretion in imposing an appropriate sanction for discovery abuse and, on appeal, we will not upset the trial court's decision unless there is an abuse of discretion. *Dakota Bank & Trust Co. v. Brakke,* 377 N.W.2d 553 (N.D.1985). Nevertheless, I write to express my concern with the use of child-support guidelines as a sanction vehicle. I believe the Legislature through the Department of Human Services has attempted to lift child support above the fray. *E.g., Montgomery v. Montgomery,* 481 N.W.2d 234 (N.D.1992) (stating under guidelines determinations of child support are made by applying calculations required by regulations and these calculations result in presumptively correct amount of child support). Child support should not be the football tossed between the parents in an attempt to out maneuver one another as they dissolve the family. I hope the trial courts, in the exercise of their discretion, will not use child support to impose sanctions for discovery abuse when other sanctions are available.

[¶ 40] I realize Dale Barth's failure to comply with discovery requiring him to divulge information about his income directly affected the computation of child support and arguably justifies the sanction imposed in this instance. But, notwithstanding the trial courts discretion, we would, in my opinion, be hard pressed to sustain a sanction reducing child support when the custodial parent refuses to divulge information as to income or property for the purpose of establishing spousal support or dividing the marital property.

[¶ 41] I believe other sanctions are available for this egregious conduct. I urge the trial courts to keep the calculation of child support as close to the mathematical computation prescribed by the guidelines as possible. Distortions of the guidelines for one purpose only serve to encourage that distortion for other purposes.

[¶ 42] Gerald W. VandeWalle, C.J.