Filed 3/12/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 47

Joe M. Dufner, Plaintiff, Appellant

and Cross-Appellee

v.

Kerry A. Dufner, Defendant, Appellee

and Cross-Appellant

No. 20010163

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Bruce E. Bohlman, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Ward K. Johnson III, Johnson & Associates, P.C., 301 N. 3rd St., Ste. 202, P.O. Box 5977, Grand Forks, ND 58206-5977, for plaintiff, appellant and cross-

appellee.

Jay H. Fiedler, Pearson Christensen, 24 N. 4th St., P.O. Box 5758, Grand Forks, ND 58206-5758, for defendant, appellee, and cross-appellant.

Dufner v. Dufner

No. 20010163

Kapsner, Justice.

[¶1] Joe Dufner appeals from a divorce judgment, challenging the trial court’s decision granting a divorce on the grounds of irreconcilable differences, its property division, and child support calculation.  Kerry Dufner has appealed the custody determination.  The trial court was not clearly erroneous in granting the divorce on irreconcilable difference grounds, in its property division, or custody determination.  The trial court did err as a matter of law in calculating Kerry’s child support obligation.  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I

[¶2] Joe and Kerry Dufner were married in January of 1994.  Joe is a farmer and Kerry is a medical coder at a hospital in Grand Forks.  They have two minor children.  In August of 2000, Joe accused Kerry of committing adultery with a doctor with whom she worked.  On August 9, 2000, Joe filed for divorce on the grounds of adultery.  Kerry counterclaimed, asking for a divorce on the grounds of irreconcilable differences.  Both parties petitioned for custody of their children.

[¶3] In an interim order, Joe was awarded temporary custody of the children, with Kerry to pay child support.  In another interim order, Joe was ordered to disburse $5000 from the marital assets to Kerry for litigation expenses.  After being granted immunity from criminal prosecution for adultery, Kerry admitted to an extramarital affair.

[¶4] On May 31, 2001, the parties were granted a divorce on the grounds of irreconcilable differences.  Joe was awarded custody of the two children, and Kerry’s child support obligation was calculated to be $497 per month.  Joe has appealed the grounds on which the divorce was granted, the property division, and Kerry’s child support calculation.  Kerry has appealed the custody determination.

II

[¶5] If a trial court grants a divorce on the basis of irreconcilable differences, that decision will not be overturned unless we determine the finding of fact is clearly erroneous.  
Rambel v. Rambel
, 248 N.W.2d 856, 859 (N.D. 1977).  A finding of fact is clearly erroneous if induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made.  
Peterson v. Peterson
, 1999 ND 191, ¶ 6, 600 N.W.2d 851.

[¶6] Joe argues he has a right to seek, and be awarded, a divorce on the grounds of adultery.  Kerry admits committing adultery, but petitioned the trial court for a divorce on irreconcilable difference grounds.  At the time of their divorce, adultery and irreconcilable differences were two of eight causes for divorce.  N.D.C.C. § 14-

05-03.
(footnote: 1)  If the evidence establishes one of the grounds for divorce, it is not necessary for the court to make findings on other available grounds.  
See
 
Rambel
, 248 N.W.2d at 859.

[¶7] There is sufficient evidence to find the trial court’s grounds for divorce are not clearly erroneous.  The trial court found fault in the marital breakup was not monopolized by the defendant and her extramarital affair.  The trial court noted the long hours Joe worked on his farming operation, and how these hours devoted to the farm instead of to his family led Kerry to feel neglected.  Kerry testified at the divorce trial that as early as the winter of 1997 she confronted Joe about her dissatisfaction with the marriage and the amount of hours he was working.  Kerry testified:

I told him that I was very unhappy and I didn’t feel like I was being treated with respect.  I had told him many times and begged him many times to be around more in certain instances in the winter time.  For instance, he would work 60 hours a week.  I had asked him to please take Saturdays off.  Those were the days we were home.  He said he would have to talk it over with his father.  It happened one time.  He said you don’t understand where a dollar comes from and this is what I’m going to do.  I still have to work it.  I told him too that the kids need you Joe and I don’t want to be a single parent.  We’re married.  You have to be participating more with the children.

Kerry also testified of Joe’s dismissive reaction to her pleas—“[h]e would tell me it’s not that bad.  He would more-or-less dismiss me and more-or-less say that I was kind of crazy for thinking what I was doing and how I felt was he didn’t really care how I felt.”  Granting a divorce on the grounds of irreconcilable differences because conduct of both parties contributed to the breakdown of the marriage is not clearly erroneous.

III

[¶8] Under N.D.C.C. § 14-05-24, “[w]hen a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper . . . .”  “There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the circumstances of the particular case.”  
Nelson v. Nelson
, 1998 ND 176, ¶ 6, 584 N.W.2d 527.  With property division, equitable does not mean equal, but a substantial disparity needs to be explained.  
Wald v. Wald
, 556 N.W.2d 291, 294 (N.D. 1996).  “The trial court’s determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous.”  
Mellum v. Mellum
, 2000 ND 47, ¶ 14, 607 N.W.2d 580. 

[¶9] When distributing property, the trial court is compelled to use the 
Ruff-Fischer
 guidelines, which require consideration of the following factors:

the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-

producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

Id.
 at ¶ 15.  We have held the trial court must consider all property accumulated by the parties, whether jointly or individually owned.  
Barth v. Barth
, 1999 ND 91, ¶ 8, 593 N.W.2d 359.  “We have repeatedly held that property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution.”  
Grinaker v. Grinaker
, 553 N.W.2d 204, 208 (N.D. 1996).  After all assets are included in the marital estate, under the 
Ruff-Fischer
 guidelines the source of the property can be considered in making the equitable distribution.  
Barth
, at ¶ 8.  

[¶10] Joe’s primary arguments are the land he brought into the marriage should first be offset when dividing the marital estate, and the legal fees paid to Kerry should be factored into the distribution.

[¶11] The trial court found the net marital estate to be $400,993.  Kerry was awarded property equal to one-half of this amount, part of which consisted of a cash settlement payable over ten years with interest, and part of which consisted of her retirement account, her vehicle, and cash.  Joe’s award of one-half of the net marital estate consisted of the farmstead, farm land, and all farm assets.  In one of its orders, the trial court awarded Kerry $5000 for litigation costs.

[¶12] When dividing the marital estate, one factor, of many, under the 
Ruff-Fischer
 guidelines is the source of the property.  However, a party’s acquisition of a parcel of land before marriage does not automatically mean that party is entitled to the same parcel upon distribution.  This Court has never decreed property brought into a marriage by a party must be irrevocably set aside for the party.  
Freed v. Freed
, 454 N.W.2d 516, 521-22 (N.D. 1990).  “Whether property was acquired by one spouse before the marriage is a consideration, but not controlling.”  
Peterson
, 1999 ND 191, ¶ 8, 600 N.W.2d 851.  In this case, the trial court correctly included the previously acquired land in the marital estate and then made its distribution, allocating the land to Joe after considering its value in structuring the cash settlement to Kerry.      

[¶13] The trial court attempted to award the parties nearly equal property awards based on the 
Ruff-Fischer
 guidelines.  In addition, $5000 was awarded to Kerry for her litigation expenses.  This $5000 was not included in the computation of the parties’ net marital estate.  Joe is not appealing the amount of the award, or even the award itself.  Rather, he is arguing the litigation costs awarded to Kerry must be explained in the property division.  “It is well-settled in our case law a property division does not need to be equal to be equitable, but a substantial disparity must be explained.”  
Young v. Young
, 1998 ND 83, ¶ 11, 578 N.W.2d 111.  

[¶14] The trial court valued the marital estate at slightly over $400,000.  While “an award of attorney fees is ‘inextricably connected’ to the other financial provisions” in a divorce decree, the guiding concepts for an award of attorney fees are “the parties’ needs and ability to pay.”  
Emter v. Emter
, 1999 ND 102, ¶ 17, 595 N.W.2d 16.  Furthermore, a trial court has considerable discretion in awarding attorney fees, and an award will not be overturned absent an abuse of discretion.  
Id.
  

[¶15] Even though the court did not itemize the award of attorney fees in the computation of the marital estate, in this case Joe has failed to show the resulting property distribution was clearly erroneous.  
See
 
Heinz v. Heinz
, 2001 ND 147, ¶ 7, 632 N.W.2d 443.  A difference of $5000 in this property distribution is not such a disparity that it must be explained by the trial court.  
See
 
Mellum
, 2000 ND 47, ¶¶ 14, 17, 607 N.W.2d 580 (holding the trial court’s findings support and explain the unequal distribution of approximately 65 percent of the property to one party and approximately 35 percent of the property to the other).  The $5000 awarded to Kerry for her litigation expenses is an extremely small percentage of the overall value of the marital property.  The trial court was not clearly erroneous in its distribution of the marital assets.

IV

[¶16] Kerry has appealed the child custody decision which awarded Joe custody of their two children.  She argues her role as primary caretaker of the children before the divorce proceeding was not sufficiently considered by the trial court in its custody determination.

[¶17] A child custody determination will be reversed only if it is clearly erroneous.  
Stoppler v. Stoppler
, 2001 ND 148, ¶ 7, 633 N.W.2d 142.  “In making an initial custody determination, a trial court must base custody on the best interest and welfare of the child, considering all of the factors listed in N.D.C.C. § 14-09-06.2(1).”  
Id.
 at ¶ 5.  “A separate finding is not required for each factor, but the court’s findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the district court’s decision.”  
Peek v. Berning
, 2001 ND 34, ¶ 6, 622 N.W.2d 186.

[¶18] The trial court specifically discussed all of the factors in N.D.C.C. § 14-09-

06.2.  In his memorandum decision and order, the trial judge noted factor (d), “[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity,” and factor (e), “[t]he permanence, as a family unit, of the existing or proposed custodial home,” favored the children continuing to live at the farm near Buxton with their father, their home prior to divorce proceedings.  The trial court also determined factor (g), “[t]he mental and physical health of the parents,” factor (h), “[t]he home, school, and community record of the child,” and factor (k), “[t]he interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child’s best interests,” all favored Joe.  The trial court determined the remaining statutory factors were either not applicable or did not favor either party. 

[¶19] Reviewing the record, we are able to understand from the findings the factual basis for the determination it is in the best interests of the children for Joe to be the custodial parent.  It is apparent from the memorandum opinion the trial court believed a home which the children had lived in for virtually all their lives was in their best interests.  The trial court recognized the strong attachment to the home, school, and community the young children exhibited.  The older child had begun school in Buxton, and the Buxton community housed multiple members from their extended family.  The trial court felt it was in the children’s best interests to keep them closer to this extended family.  It is also apparent the trial court was concerned with possible interactions and interrelationships between Kerry’s adulterous lover and the children.  The trial court felt it was in the children’s best interests to minimize these contacts, and instead nurture the contacts between family members.  When we consider the trial court’s analysis of factors (d) and (e) together with its analysis of factors (g), (h), and (k), it is clear the court believed and found the two children’s future prospects for a stable family environment with a more permanent family unit were greater in Joe’s custody.  
See
 
Stoppler
, 2001 ND 148, ¶¶ 9-12, 633 N.W.2d 142 (examining the overlap between factors (d), continuity of environment, and (e), prospects for stable family unit).   

[¶20] Kerry argues her role as primary caretaker of the children before the divorce proceedings was not sufficiently considered by the trial court.  While Kerry’s one-

time role as primary caretaker deserves recognition, a primary caretaker does not enjoy paramount or presumptive status.  
See
 
Heggen v. Heggen
, 452 N.W.2d 96, 101 (N.D. 1990).

[¶21] We conclude there was sufficient evidence to support the finding the award of custody to Joe was in the best interests of the children.  The trial court’s decision is not clearly erroneous.

V

[¶22] Section 14-09-09.7 of the North Dakota Century Code mandates the department of human services establish child support guidelines, and creates the rebuttable presumption the amount of support designated in the guidelines is correct.  Chapter 75-02-04.1 of the North Dakota Administrative Code establishes these child support guidelines.  The standard of review for child support determinations:   

involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.  A court errs as a matter of law when it fails to comply with the requirements of the Guidelines.

Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  “As a matter of law, the trial court must clearly set forth how it arrived at the amount of income and level of support.”  
Minar v. Minar
, 2001 ND 74, ¶ 10, 625 N.W.2d 518.

[¶23] Joe argues the trial court improperly calculated Kerry’s net income for purposes of establishing her child support obligation.  He contends Kerry’s compensation for teaching a semester at a technical college should be considered income.  Kerry argues the trial court correctly excluded the teaching compensation from her income because the position was temporary.

[¶24] To determine a child support obligation, a court must first calculate an obligor’s gross income.  
Hoverson v. Hoverson
, 2001 ND 124, ¶ 35, 629 N.W.2d 573.  Gross income is income from any source.  N.D. Admin. Code § 75-02-04.1-01(5).  An obligor’s net income is used to compute the child support obligation.  
Id.
 § 75-02-

04.1-02(3).  Net income is defined as gross annual income less various deductions and exemptions.  
See
 
id.
 § 75-02-04.1-01(7).  “A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines.”  
Hoverson
, at ¶ 35. 

[¶25] “Courts, by necessity, rely on past information about a child support obligor’s income when calculating child support amounts.”  
Helbling v. Helbling
, 541 N.W.2d 443, 447 (N.D. 1995).  “Past income is generally the best predictor of future income and child support is based upon income.”  
Id.
  The child support guidelines clearly express the principle of using past income to predict future income in North Dakota Administrative Code § 75-02-04.1-02(8).  
Shaver v. Kopp
, 545 N.W.2d 170, 175 (N.D. 1996).  Past information concerning income is “documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income.”  N.D. Admin. Code § 75-02-04.1-02(7). 

[¶26] In this case, Kerry taught a class at technical college for one semester.  She was paid $4200 for this teaching job.  The teaching job was in addition to her permanent job.  In its decision, the trial court ordered Kerry “shall pay child support based on her income at [the hospital], and not any temporary teaching position at the [technical college].  If the teaching employment is continued beyond this semester, the matter may be revisited.”  The trial court erred as a matter of law by not including the teaching compensation in the determination of Kerry’s gross income.  Not only is gross income calculated from income from any source, the administrative code specifically includes wages and salary in the definition of income.  N.D. Admin. Code § 75-02-04.1-01(5)(b); 
see also
 
Helbling
, 541 N.W.2d at 447.

VI

[¶27] The trial court was not clearly erroneous in granting a divorce on irreconcilable difference grounds, in its property division, or custody determination.  The trial court did err as a matter of law in calculating Kerry’s child support obligation.  We affirm the grounds upon which the divorce was granted, the property distribution, and the custody decision.  We reverse the child support order and remand for recalculation of Kerry’s child support obligation.

[¶28] Carol Ronning Kapsner

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
Effective August 1, 2001, N.D.C.C. § 14-05-03 was amended:

Causes for divorce.
  Divorces may be granted for any of the following causes:

1.  Adultery.

2.  Extreme cruelty.

3.  Willful desertion.

4.  Willful neglect.

5.  Abuse of alcohol or controlled substances.

6.  Conviction of felony.

7.  Irreconcilable differences.