2002 ND 144

**Sheila BOEHM, Plaintiff and Appellee,**

v.

**David BOEHM, Defendant and Appellant.**

**No. 20010318.**

Supreme Court of North Dakota.

Aug. 29, 2002.

674

Todd D. Kranda, Kelsch, Kelsch, Ruff & Kranda, Mandan, ND, for plaintiff and appellee.

Robert V. Bolinske, Jr., Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] David Boehm appeals from a divorce judgment, challenging the trial court's denial of his motion for continuance, the property division, and child support calculation. The trial court did not abuse its discretion in denying the motion for a continuance, and was not clearly erroneous in its property division. The trial court did err as a matter of law in calculating David's child support obligation. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I

[¶ 2] Sheila and David Boehm were married in August of 1989. Sheila worked at Wal–Mart and David managed the family video store business. They have two minor children. In January of 2001, Sheila filed for divorce on the grounds of irreconcilable differences. Trial was set for September 6, 2001.

[¶ 3] In January of 2000, David had entered into an agreement with his father regarding a video store business with locations in Bismarck and Dickinson. The "lease with option to purchase" covered a seven-year period—January 1, 2000 through December 31, 2006. The terms of the agreement included an initial $25,000 payment and monthly payments of $2500. If the agreement ran the full term, David could purchase the business "for $20,000.00 or a different price if agreed to ... in writing." David could also purchase the

business before the duration of the agreement had run "by applying an amount equal to 85 percent of the total lease payments to date . . . and paying the difference in cash." The agreement valued the business at $200,000, but the price could "be modified if agreed to . . . in writing." In June of 2001, the Bismarck location was destroyed by fire. In August of 2001, David moved for a continuance of the trial, based on the uncertain future of the business. His motion was denied, and trial was held on the date scheduled.

[¶ 4] On November 8, 2001, the parties were granted a divorce on the grounds of irreconcilable differences. Sheila was awarded custody of their two children, and David's child support obligation was calculated to be $779 per month. David has appealed the denial of the motion for continuance, the property division, and child support calculation.

## II

[¶ 5] David contends the trial court abused its discretion in denying his request for continuance of the September 2001 trial date. He argues because the destruction of the video store rendered his business future and income uncertain, it would have been beneficial for both parties to have the trial continued to a later date. David asserts the complexity of the situation, amplified by the provisions of the lease, made it impossible to clarify issues regarding the business prior to the scheduled trial date.

[¶ 6] "A motion for continuance will be granted only for good cause shown." *Kjonass v. Kjonass*, 1999 ND 50, ¶ 11, 590 N.W.2d 440. "The decision to grant or deny a motion for continuance lies within the discretion of the trial court, and its determination will not be overturned on appeal absent an abuse of discretion." *Id.* "A trial court abuses its discretion when it

acts in an arbitrary, unreasonable, or unconscionable manner." *Fahlsing v. Teters*, 552 N.W.2d 87, 90 (N.D.1996).

[¶ 7] Even though the Bismarck business location was destroyed on June 12, 2001, David did not move for a continuance until August 23, 2001—two weeks before the scheduled trial date. David failed to assert any pertinent information, whether financial or otherwise, was destroyed in the fire. Under these circumstances we cannot say the trial court acted arbitrarily, unreasonably, or unconscionably in denying David's request for a continuance. The trial court did not abuse its discretion.

## III

[¶ 8] David argues he is entitled to one-half of the value of both the marital home and Sheila's Wal–Mart retirement accounts because of contributions made during the marriage. He also argues valuing the video store at $40,000 is clearly erroneous.

## A

[¶ 9] Under N.D.C.C. § 14–05–24(1), "[w]hen a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties." "There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the circumstances of the particular case." *Nelson v. Nelson*, 1998 ND 176, ¶ 6, 584 N.W.2d 527. With property distribution, equitable does not mean equal, but a substantial disparity must be explained. *Wald v. Wald*, 556 N.W.2d 291, 294 (N.D. 1996). "The trial court's determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous." *Mellum v. Mellum*, 2000 ND 47, ¶ 14, 607 N.W.2d 580. A finding of fact is clearly erroneous if it is induced by an erroneous

view of the law, if there is no evidence to support it, or if, although some evidence supports it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made. *Peterson v. Peterson*, 1999 ND 191, ¶ 6, 600 N.W.2d 851.

[¶ 10] When distributing property, the trial court must use the *Ruff–Fischer* guidelines, which stipulate the consideration of the following factors:

> the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Mellum*, 2000 ND 47, ¶ 15, 607 N.W.2d 580. We have held the trial court must consider all property accumulated by the parties, whether jointly or individually owned. *Barth v. Barth*, 1999 ND 91, ¶ 8, 593 N.W.2d 359. After all assets are included in the marital estate, only then under the *Ruff–Fischer* guidelines can the source of the property be considered in making the equitable distribution. *Barth*, at ¶ 8.

[¶ 11] David's argument he is automatically entitled to one-half of the value of both the marital home and Sheila's retirement accounts is flawed. The award of the marital home and the Wal-Mart retirement accounts to Sheila "can only properly be considered in the context of the entire property distribution." *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 34, 574 N.W.2d 790 (Neumann, J., concurring and dissenting). The trial court does not examine and distribute each piece of property independently without regard to other property. Instead, all assets and property accumulated by the parties, including the home and retirement accounts, must be included in the marital estate and considered by the trial court. *See Dufner v. Dufner*, 2002 ND 47, ¶ 9, 640 N.W.2d 694 (holding a trial court must consider all property obtained by the divorcing parties). Once all property is included in the marital estate, only then is it equitably divided. *See id.* The whole distribution of property must be equitable, not each individual asset. *Emter v. Emter*, 1999 ND 102, ¶ 10, 595 N.W.2d 16.

### B

[¶ 12] David also argues valuing the video store at $40,000 is clearly erroneous. David contends the store has a value of $0, while Sheila contends the store has a value of $300,000. Sheila's valuation is based upon the $200,000 purchase price listed in the agreement and insurance policy values on the Bismarck location. David's valuation is based upon the destruction of the Bismarck location and his contention he did not have any vested interest in the business. The trial court valued the store at $40,000 based on David's "experience and management abilities."

[¶ 13] A trial court's determination on valuation of property is treated as a finding of fact and will be reversed only if clearly erroneous. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561. "The trial court, which had the opportunity to observe the demeanor and credibility of the parties, is in a far better position than an appellate court in ascertaining the true facts regarding the property's value." *Freed v. Freed*, 454 N.W.2d 516, 521 (N.D.1990). "Marital property valuations within the range of the evidence

are not clearly erroneous." *Peterson*, 1999 ND 191, ¶ 12, 600 N.W.2d 851. Generally, fair market value is the proper method of valuing marital property in a divorce. *Id.* at ¶ 11. Earning power is not a property interest subject to equitable distribution. *See Nastrom v. Nastrom*, 262 N.W.2d 487, 493 (N.D.1978) ("Earning power is not, however, property that a court may divide as it would a parcel of land or a collection of household goods."). A trial court can value property not yet completely owned by one of the divorcing parties. *See Peterson*, at ¶ 13 (affirming a trial court's valuation of a steakhouse where a balance was owing on its contract for deed). Property interests not yet reduced to possession during the marriage are to be regarded as marital property if the interest still exists at the time of divorce. *See* Sonja A. Soehnel, Annotation, *Divorce Property Distribution: Treatment and Method of Valuation of Future Interest in Real Estate or Trust Property not Realized During Marriage*, 62 A.L.R.4th 107, 135 (1988) (citing *Frank G.W. v. Carol M.W.*, 457 A.2d 715 (Del.1983)). Although David did not yet have the legal title to the video store business we cannot conclude the trial court erred in including it in the property distribution where the contract provided for eventual transfer of title and the contract remained in force at the time of trial. *See Peterson*, at ¶ 13.

[¶ 14] The agreement between David and his father was styled as a "lease with option to purchase." That description is not conclusive and we are not bound by it. *Prairieview Nursing Home v. North Dakota Department of Human Services*, 1999 ND 142, ¶ 13, 598 N.W.2d 116. Rather than being a lease with an option to purchase the video stores, the agreement is more akin to a conditional sale. *Wallwork Lease and Rental Co. v. JNJ Investments, Inc.*, 303 N.W.2d 545, 547 (N.D. 1981) (citing *Burroughs Corp. v. Barry*, 380 F.2d 427, 431 (8th Cir.1967)).[1] In this instance, David has the capacity to realize a value from the agreement because he has the ability to complete the sale. Future interests may constitute intangible personal property which are marital assets subject to equitable distribution. *See* 24 Am.Jur.2d *Divorce and Separation* § 515 (1998) ("Choses in action, rights, and other interests, the benefits of which may be receivable now and in the future, may constitute intangible personal property which are marital assets subject to equitable distribution."). According to the provisions of the agreement, David could "purchase the [business] at anytime after December 31, 2001, but before December 31, 2006." The business included locations in both Bismarck and Dickinson. The Dickinson location was not destroyed and was still operating at the time of trial. An operating business has a value. *See Bard v. Bard*, 380 N.W.2d 342, 344 (N.D.1986) (a business' value includes "at a minimum the interest in the office equipment, furniture, fixtures, and the accounts receivable."). David could realize a value from the agree-

---

1. In *Wallwork Lease and Rental Co.*, we held the test in determining whether an agreement is a lease or a conditional sale
   " 'is whether the option to purchase at the end of the lease term is for a substantial sum or a nominal amount ... [.] If the purchase price bears a resemblance to the fair market price of the property, then the rental payments were in fact designated to be in compensation for the use of the prop-

erty and the option is recognized as a real one. On the other hand, where the price of the option to purchase is substantially less than the fair market value of the leased equipment, the lease will be construed as a mere cover for an agreement of conditional sale.' "

*Wallwork Lease and Rental Co.*, 303 N.W.2d at 547.

ment because he could still purchase the video store business.

■ [¶ 15] Forty thousand dollars is within the range of values which could have been assigned to the video store business. David was approximately eighteen months into the seven-year term of the agreement. If David was current on his monthly $2500 payments through June of 2001, he would have paid a total of $42,500 in payments. Although the evidence suggests David was late in his payments, there is no evidence David's father declared a default in the business agreement, and at the time of the trial David was continuing in his management of the business. Under the terms of the agreement, eighty-five percent of the monthly payment amount could be applied to the purchase price. Eighty-five percent of the total payments due through June 2001 results in $36,125. In addition David had made a down payment of $25,000. We cannot say the valuation of the video store business at $40,000 is clearly erroneous.

### C

■ [¶ 16] The trial court awarded Sheila $177,888 in marital property, allocated $88,188 in debt to her, leaving her with a net award of $89,700. David was awarded $60,217, allocated $7,205 in debt, and left with a net award of $53,012. While acknowledging the disparity in the awards, the trial court adequately accounted for it in its factual findings. The trial court explained:

### XV.

Her need for additional cash is a consideration in determining that she should be able to retain the liquidity represented by her Wal–Mart savings plan.

### XVI.

... The history of domestic violence, and the Defendant's chemical dependency problems are considered to be a principal reason for the failure of this marriage. He has, if he can mobilize his abilities, greater earning capacity than the Plaintiff, and she will need a significant period of training in order to have a reasonable earning level....

### XVII.

Also taken into account are the needs of the minor children of the parties, for whom the Plaintiff will be assuming principal responsibility. The distribution allows for adequate housing for the benefit of the children to be maintained as an alternative to a forced sale of the residence and division of the proceeds.

### XVIII.

Also the Plaintiff will be assuming a larger portion of responsibility for the expenses incurred during the next 13 or 14 years for the benefit of the children. The division of property has also been influenced somewhat by the Defendant's pattern of avoidance in coming to grips with the property issues associated with the divorce....

It is clear the trial court considered the *Ruff–Fischer* guidelines in distributing the parties' property. In this case, the trial court took into account David's greater earning abilities, his conduct during the marriage, and the need for adequate housing for the children. Because the valuation of the video store was within the range of evidence, and because any disparity in the property distribution was adequately explained, the trial court's property distribution was not clearly erroneous.

## IV

[¶ 17] David argues the trial court improperly calculated his child support obligation when it attributed to him an income level equal to what he was earning in 1998 and 1999, even though it acknowledged he is not presently capable of earning that amount because of chemical dependency and the destruction of the Bismarck video store location.

[¶ 18] Section 14–09–09.7 of the North Dakota Century Code mandates the department of human services establish child support guidelines and creates the rebuttable presumption the amount of support designated in the guidelines is correct. Chapter 75–02–04.1 of the North Dakota Administrative Code establishes these child support guidelines.

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. As a matter of law, the trial court must clearly set forth how it arrived at the amount of income and level of support. The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. Findings are adequate if we can understand from them the factual basis for the court's determination.

*Minar v. Minar*, 2001 ND 74, ¶ 10, 625 N.W.2d 518 (citations omitted).

[¶ 19] To determine child support, a court must first calculate an obligor's gross income. *Hoverson v. Hoverson*, 2001 ND 124, ¶ 35, 629 N.W.2d 573. Gross income is income from any source, in any form. N.D. Admin. Code § 75–02–04.1–01(5). An obligor's net income is then used to compute the child support obligation. *Id.* § 75–02–04.1–02(3). "A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines." *Hoverson*, at ¶ 35. Net income is defined as gross income less various deductions and exemptions. N.D. Admin. Code § 75–02–04.1–01(7). "Courts, by necessity, rely on past information about a child support obligor's income when calculating child support amounts." *Helbling v. Helbling*, 541 N.W.2d 443, 447 (N.D.1995). "Past income is generally the best predictor of future income and child support is based upon income." *Id.* The child support guidelines clearly express this principle in N.D. Admin. Code § 75–02–04.1–02(8), which provides:

Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

"The guidelines thus amplify the direction to use the most recent information available by allowing use of circumstances that are very likely to change 'in the near future' that 'materially affect the child support obligation.'" *Mahoney v. Mahoney*, 1997 ND 149, ¶ 17, 567 N.W.2d 206.

[¶ 20] The district court calculated David's child support obligation based upon his 1998 and 1999 tax return figures and "impute[d] income to him at the level he was earning in 1998 and 1999" because David "frustrated the efforts of the Plaintiff and to some extent the Court in terms of evaluating his income situation based on a failure to provide adequate income records, even up to the point of trial." David failed to provide his 2000 tax and income figures. "[A] court's determination of an obligor's income is dependent upon the evidence presented by the parties." *Schumacher v. Schumacher*, 1999 ND 149, ¶ 35, 598 N.W.2d 131. In setting the child support obligation, the trial court was required to use the most recent information available. *See Mahoney*, 1997 ND 149, ¶ 17, 567 N.W.2d 206 (holding the child support guidelines "amplify the direction to use the most recent information available ...."); *see also Helbling*, 541 N.W.2d at 447 (holding "[c]ourts, by necessity, rely on past information about ... income ...."). David failed to make a reasonable effort to provide the requested income information. "We will not permit a party to take advantage of his duplicity at the trial court level to urge error on appeal." *Anderson v. Anderson*, 504 N.W.2d 569, 571 (N.D.1993). "If the obligor fails, upon reasonable request made in any proceeding to establish a child support obligation, to furnish reliable information concerning the obligor's gross income from earnings, income based on earning capacity equal to the greatest of subdivisions a through c of subsection 3 must be imputed." N.D. Admin. Code §§ 75–02–04.1–07(7). Subdivisions a., b., and c. of N.D. Admin. Code § 75–02–04.1–07(3) provide the greatest is to be imputed:

a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

Since neither party supplied information regarding subdivisions a. and b., the trial court is to impute income according to subdivision c. Because this proceeding was filed January 4, 2001, N.D. Admin. Code § 75–02–04.1–07(7) required that income be imputed based upon David's highest earnings in a consecutive twelve-month period, commencing on or after January 4, 1998, for which reliable evidence was provided. The highest twelve-month period for which reliable evidence was presented in this case is David's 1999 income of $41,706. Accordingly, we reverse and remand with directions to calculate child support based upon ninety percent of David's 1999 income.

## V

[¶ 21] The trial court did not abuse its discretion in denying the motion for a continuance and was not clearly erroneous in its property division. The trial court did err as a matter of law in calculating David's child support obligation. We affirm the denial of the motion for continuance and property distribution. We reverse the child support order and remand with directions to calculate child support based upon ninety percent of David's 1999 income.

[¶ 22]GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ.

SANDSTROM, Justice, dissenting.

[¶ 23] I dissent to the majority's affirmance of the business asset value of $40,000, which is included in the marital estate and awarded to David Boehm.

[¶ 24] The majority writes a rationale of how the trial court could have achieved this result regarding the valuation of the business. The problem is, it is not what the trial court did, and what the trial court did is not permitted.

[¶ 25] The majority says, at ¶ 14:

The agreement between David and his father was styled as a "lease with option to purchase." That description is not conclusive and we are not bound by it. Rather than being a lease with an option to purchase the video stores, the agreement is more akin to a conditional sale. In this instance, David has the capacity to realize a value from the agreement because he has the ability to complete the sale. Future interests may constitute intangible personal property which are marital assets subject to equitable distribution.

(Citations and footnote omitted). This is all fine and good, but it is not what the trial court found or did.

[¶ 26] What the majority conjures is refuted by the trial court's Memorandum Opinion, at its Findings of Fact, Conclusions of Law, and Order for Judgment. In its Memorandum Opinion, the trial court writes:

*I conclude* that the record of the business arrangement between the defendant and his father indicates that *he has little of value in terms of actual equity in the businesses, but* am going to attribute the sum of $40,000 to him *based on his experience and management abilities* if he is able to continue the business relationship with his father.

(Emphasis added). In its Findings of Fact, Conclusions of Law, and Order for Judgment, the trial court says:

The case involves difficult issues regarding computation of the parties' assets based on the unusual business relationship the Defendant had with his father, Albert Boehm. The Defendant's father continues to be the owner of video store businesses in Bismarck and Dickinson, which the Defendant was leasing with certain purchase option provisions that would contemplate a buy-out of the businesses at a future date. The Plaintiff asserted that the businesses should be valued at their full value and attributed to the Defendant as a marital asset of $300,000. The destruction by fire of the major Hollywood Nites video business prior to the divorce trial, coupled with the apparent faltering nature of the business due to the Defendant's failure to provide adequate management, or fulfill terms of the business arrangement with his father, have left the impression that the business asset figure the Plaintiff proposes is significantly inflated. *The record of the business arrangement between the Defendant and his father indicates that he has little of value in terms of actual equity in the businesses. The sum of $40,000 is attributed to him based on his experience and management abilities.*

(Emphasis added).

[¶ 27] As the majority notes at ¶ 13, "Earning power is not, however, property that a court may divide as it would a parcel of land or a collection of household goods." *Nastrom v. Nastrom,* 262 N.W.2d 487, 493 (N.D.1978). But that is what the trial court did when it included and distributed a "$40,000 asset" of David Boehm's "experience and management abilities." The trial court could not do it, but did.

Therefore, I would reverse and remand on the issue.

[¶ 28]   Dale V. Sandstrom